Bissell, P. J.
The principal question presented herein respects the right to redeem from a sale under an execution issued on a judgment rendered in an action at law, and the parties who may exercise it. The bill was drafted, the case tried, and the decree *369 rendered on the hypothesis that notwithstanding our statute which provides for the redemption of property from an execution sale and determines the mode and method of that redemption and declares the rights of both debtor and creditor, there exists outside of it and beyond it, an equitable right to redeem as in cases where junior mortgagees, or judgment creditors, have not been made parties to foreclosure proceedings. This we cannot concede. The right to redeem from an execution sale is a purely statutory one. It does not exist without the statute, and it is only under and by virtue of some statutory right that parties may attack the title which the purchaser obtains at an execution sale regularly held on a valid judgment. All the authorities agree on this proposition. Rorer on Judicial Sales, chap. 18, §1184 et seq.; 2 Freeman on Executions, chap. 23, § 314 et seq.
Many cases to this direct point might be cited, but the general doctrine and the supporting decisions are referred to in these text books. We do not intend to hold that there may not, under some circumstances, be an equitable right of redemption. This phrase, “ equitable right of redemption,” must not however be taken according to the ordinary significance of the words, nor must it be taken in its broadest or fullest extent. All we intend to hold is, that a party having a right of redemption, Avhich he has attempted to exercise under and. according to the statute, but which he has failed to effectuate by reason of some excusable fact, or where he has attempted to make it and his right has been refused by the officer holding the execution, or where by reason of collusive judgments which are fraudulent as to him he is unable to complete his statutory redemption, he may file a bill in equity setting up the facts on which his right rests, the facts which constitute his excuse or which obstructed the redemption, and making due proof obtain a decree which shall establish it. But in the end the result is, that the decree simply establishes his legal statutory right. There may be other cases than those which we have suggested under which a bill might be filed to this end. We do not *370 ■undertake to state all possible exceptions. We hold that there is no such general right. None is provided for in the statute, nor do we find any has been established by adjudication. The authorities agree that it is only by virtue of a statute that redemption from an execution sale may be made. We thus dispose of one of the fundamental contentions of the appellees and the real proposition on which the bill was based and the decree entered.
We now come to a more pertinent and particular principle on which the appeal turns. Paddack’s right to redeem is disputed because his judgment was not a lien on the property at the time of the antecedent sales, and because there was nothing to which a lien could attach when he filed his transcript, sued out his execution and made his redemption. This contention is not supported by any well-considered authorities to which our attention has been directed. It is undoubtedly stated in some of the text writers and some of the cases that the judgment creditor must have a lien at the time he attempts to exercise his right. But those decisions were rendered in states where the redemption statutes provide that only lien creditors may exercise the right. The rule is held otherwise in Illinois under a statute similar in phraseology to ours, and in that state any judgment creditor may redeem. 2 Freeman on Executions, chap. 23, § 317; Karnes v. Lloyd, 52 Ill. 113 ; Couthway v. Berghaus, 25 Ala. 393; Pease v. Ritchie et al., 132 Ill. 638.
Unless the statute requires a lien, a judgment creditor may redeem regardless of the date of the entry of the judgment, providing he makes redemption within the statutory time. All other questions being resolved in his favor Paddack then, on the 5th of October, had a right to make redemption, and these matters, viz, the time his judgment was entered, the time he filed his transcript, the time he issued his execution, or the time he attempted to redeem, do not affect his right. There are statutes which require that the redemption shall be made in the sheriff’s office and between hours designated, as the statutes generally provide *371 that execution sales must be made between nine o’clock in the morning and sundown. Wherever such enactments are in force the courts hold that there must be an exact compliance with them, and an attempted redemption elsewhere, or under other circumstances, or at different hours, or different places, would be wholly ineffectual. However, any criticism with reference to Paddack’s procedure because of the time and circumstances of his redemption is entirely foreign to any real question involved, and in no manner affects his acts or his claim. Whatever moral criticism might be put on the extreme diligence which would lead a creditor to deliver his execution fifteen minutes after midnight does not impeach the legality or the regularity of the right.
Having thus disposed of the equitable right of redemption and the regularity of Paddack’s judgment and redemption, we have practically decided that Paddack acquired some rights to which the prior judgments, to wit, Staley, Morrison, Giant Powder Company and Stouffer are undoubtedly subject. What those rights are, how they were affected by what was done, has been entirely and completely settled by the adjudications of this court in an opinion which was approved by the supreme court. The case to which we refer is Floyd et al. v. Sellers, 7 Colo. App. 498. Sellers v. Floyd et al., 24 Colo. 484.
This case undoubtedly decided in the language of Judge Thomson that, “ the effect of a sale of land on execution is to destroy all liens which are subsequent to the lien of the judgment upon which the execution was issued, or that which it was used to enforce.” It also holds that the purpose for' which the judgment creditor is permitted to redeem is to revive his own judgment lien. This language was undoubtedly used by the learned judge as applied to the particular case and not as an absolute expression of the entire effect of a redemption, nor is it an attempt to state all the cases to which the statute would apply or the effect of redemption acts in all the cases which might arise under the statute. When the learned judge says that its effect was to revive a judgment lien, it was *372 not intended to decide that there must be a lien to revive, or that a judgment creditor who held no lien when he attempted to redeem might not acquire rights under the statute. This much of an explanation is necessary because in the present case, Paddack acquired no lien when he filed his transcript. The debtor had no interest in the property because it had been sold. It had been sold twice, once under a judgment prior to all the others, to wit, the Kaiser, and second, under a judgment of the Giant Powder Company. The estate of the debtor was gone, he could not redeem, and the subsequent judgment creditors could only exercise the naked right of redemption. There was nothing to which Paddack’s lien could attach. This must be true in the present case because the sale of the Giant Powder Company on the 23d of January, 1894, was more than six months prior to the time Paddack filed Ms transcript and issued his execution ; the hour of redemption was therefore gone as to the debtor and he had nothing to which the lien could attach. As applied to all cases, perhaps the expression would be more accurate, if it had been put as a revival of the creditor’s judgment rights in place of a revival of a judgment lien. TMs, however, is not put by way of criticism on the accuracy of the opinion of Judge Thomson as applied to the case then under consideration, but to show that as a general definition it anight not be under all circumstances exactly accurate. The learned judge however, proceeds further: “ The others which were extinguished by the sale, remain extinct; and notwithstanding they may have been superior to his in point of time, the holders, not having availed themselves of the provisions of the statute'permitting them to redeem, can claim no advantage by reason of his redemption; and if the property is struck off to him for the amount of the redemption money and interest, he takes the title discharged from the liens of the prior judgments, and subject to no further redemption.” This doctrine was completely approved by the supreme court in the case referred to, which also holds that sales under subsequent judgments are inoperative on prior and paramount *373 liens on the property for which it may be afterwards sold. The language “ takes the title discharged from the liens of prior judgments ” has been unduly extended in the argument. Overlooking the facts in the Floyd v. Sellers case and the scope of the decision, it is argued that this result follows a sale under a junior as well as a sale under a paramount judgment; that a sale under a junior judgment cuts off senior as well as later liens. This is not true, nor did the court so decide. The whole tenor of the opinion was to the proposition and this only, that when a sale was had under a prior and paramount judgment it effectually cut off all later judgment claims and left to them the naked statutory right. The importance of this distinction is apparent when we remember that the Giant Powder Company’s sale was in January, 1894, and the Kaiser sale in April. It might otherwise be imagined that the Floyd v. Sellers case was a direct adjudication to the point that the sale under the Giant Powder Company’s judgment would cut off the prior and paramount lien held by Kaiser, or by Staley and Morrison. This manifestly could not be true because a judgment creditor and lienor cannot cut out prior lienors by a sale. These two decisions also hold that the sale under the Kaiser judgment extinguished all claims of Staley, Morrison, the Giant Powder Company and Stouffer, and everybody else who were subsequent in time. When the liens are extinguished the judgments are extinct for all practical purposes of enforcement by sale. By this process we are brought to the consideration of the direct and pivotal question in the case, What right Paddack acquired by virtue of .his redemption ?
On the 4th of April the property was sold under the Kaiser judgment, the purchaser took title free from the lien of the judgments of Staley, Morrison, the Giant Powder Company, Stouffer, or Paddack, or any judgment which had been or might thereafter be rendered up to the time of the expiration of the period of redemption, but there remained to each the right to redeem from the Kaiser judgment and to one equally witli every other. This is the condition of our redemption statute. *374 It is an unfortunate piece of legislation which loudly calls for legislative correction. The courts are impotent to aid creditors and only the lawmaking power may furnish a remedy. Many states provide that subsequent judgment creditors shall have the right to redeem according to their priority and within dates and times named in the act, so that each judgment creditor may exercise and preserve his lien and Ms claim not by excessive diligence and redemption in the midnight hour, but within specific limits. Manifestly this would be right and proper. But there is no such provision in our statute. Any judgment creditor may redeem within the time specified; he may be, the first, the second, the fifth, or one who has come into the vineyard at the eleventh hour and he will receive as much benefit from the statute as though he had been originally hired.
Since we decide that Paddack’s right is not affected by the date at wMch his judgment was recovered, the time at which the transcript was filed, or by the fact that it was not a lien, Paddack on the 5th of October had the absolute statutory right to sue out an execution, pay to the sheriff the amount of money necessary to redeem from the Kaiser judgment and have the property put up and sold under Ms execution, and this notwithstanding the fact that Staley, Morrison, the Giant Powder Company, or Stouffer may have been or were prior judgment creditors. Since they did not proceed first he might have the property sold under his execution. This situation is fairly deducible not only from the equitable doctrine which has long been established and recognized in all courts, but from the very terms of the statute. From the situation of these various judgment liens it is manifest that by the recovery of his judgment, the filmg of Ms transcript and the issuance of his execution, Paddack acquired no equity in the property, no lien, no power to enforce one, nor is there any procedure open to him to collect Ms judgment, other than the one which the statute gives. He might do precisely the thing which he did and thereby acquire a definite, ascertained priority of right of redemption and only this limited privilege. When Paddack *375 effected a redemption from the Kaiser judgment by paying the sheriff the amount of the Kaiser sale plus the interest and costs, he could have the property put up for sale on his execution and when the sheriff offered it he made a statutory bid, to wit, the amount which he paid to redeem from the Kaiser judgment. The statute makes a bid for him, to wit, the amount of his redemption. If no bid is made by another the property is struck off to him and he gets a deed to it. What the effect of this deed would be- in case the sale was made under an intermediate judgment and a redemption was offered by a creditor on an antecedent judgment which was a prior lien, we neither undertake to determine nor do we intimate any opinion about it. There is nothing in the case which calls for the determination of this question and it must be left open for future consideration. In the present case since the deed would convey the Kaiser interest, he would doubtless take title discharged of the lien of all other judgment creditors who wrnre parties to this suit. There also would come to Paddack this further reward for his diligence; if the property be worth more than the amount of the Kaiser judgment and there were parties both able and willing to bid on it, whatever money was paid by the bidder would be credited on the Paddack execution and to this extent and to this only would he obtain satisfaction of his execution and judgment. Thereafter, if within the statutory period any other creditor should attempt to redeem, it would probably be true that they would be compelled to pay the sheriff not only the amount which Paddack had paid to redeem, but also the amount which the new purchaser, and these words “new purchaser” are used in the statute, had paid at the sale. These other redeeming creditors would thus have to pay the Kaiser judgment plus the sum paid which was credited on the Paddack execution. This much of a sacrifice of the rights of judgment creditors who were prior to Paddack, is doubtless inevitable and necessary under the peculiar provisions of our redemption statute and the particular facts of this case. We have been extremely careful, however, and it might be said, even close, critical and *376 astute to indulge in a very strict construction of the act that we might so far as was possible give to the owner of the junior judgment no other or greater rights as against the prior lienors than those which were clearly and unmistakably conferred by the statute. As we read it, we have given him all that the statute directs and to more he is not entitled. We do not decide nor do we hold that under other circumstances the right of redemption is the only legal right held or enjoyed by prior lienors. Whether this privilege could be waived and a sale had under prior j u dgments, where the redemption was not from a paramount lien, is a question not presented by this record.
We shall.pass very lightly over a point on which counsel laid great stress respecting the character of the attack on the Paddack judgment whether collateral or direct, and respecting the right of the appellees in a proper bill filed in a proper cause with right allegations to attack it for any of the reasons stated in their complaint. The character of the attack is of no significance since we adjudge that the bill cannot be maintained. It may be well, however, for us to suggest that we do not intend to decide- that under proper allegations and with adequate and competent proof Staley might not have assailed the Paddack judgment because the company did not owe the debt on which it was rendered. It may be true, and about it we express no definite conclusion, on proof that the notes or debts sued on by Paddack were not the notes or debts of the company and not legitimate claims against it. Staley or the other lienors might rest a suit to effectuate their rights and thereby maintain their privilege to redeem from the Kaiser sale. It is generally true that creditors have no concern with the results of suits by other creditors against a common debtor in so far as the suits or judgments may overreach the debtor. But wherever the judgment is rendered on invalid claims or upon things which are not debts or obligations of the common debtor, the plaintiff in the suit may under some circumstances show this, because the suit must of necessity either be collusive as between the recovering creditor and the debtor, or possibly, the law would attach *377 the presumption that there was collusion and permit the creditor whose rights were injuriously affected by this fraudulent judgment to attack it. This has been so held. Arnold v. Gifford, 62 Ill. 249.
It must not be understood that we are attempting to define all the conditions or limitations which of necessity must surround a proceeding of this sort, or the circumstances under which the bill would lie; we only refer to the proposition because it has been so vigorously urged on our attention and because we are quite of the opinion that there might be some foundation for the contention unde'r different circumstances. As we suggested in the statement, the stipulation on which the case was heard presents no agreed fact on which such a claim can be rested, nor does the record contain any evidence to support that part of the plaintiffs’ bill. It probably would have been enough to simply suggest this consideration and place our decision on it.
This decision disposes of all the questions which are likely to arise in the pursuit of this litigation or in any which may arise by reason of it. It is quite possible that there are some other contentions which ought to be disposed of. The questions are really presented by the record, and we have a right to decide them, and we think it wise to make some suggestions about them.
We have no doubt whatever that Staley could have redeemed from the Kaiser judgment and-the fact that his judgment was one for the foreclosure of a mechanic’s lien which established the lien in no manner affected Ms right. The appellant’s contention that by the issuance of an execution he lost his lien, or waived it because he issued an execution against the company, is not sustained by the stipulation. The execution itself is not before us and we are not advised as to its character. It does not, however, distinctly appear to have been an execution on the personal part of the Staley judgment. We are therefore not called on to decide whether it comes distinctly within the case of Finch v. Turner et al., 21 Colo. 287. We do not think it would come within the *378 principle of that case. Staley did. not intend to waive his lien. The execution was issued for the purposes of redemption, and it might be, although we do not directly decide it, that he could have issued this sort of an execution for redemption purposes without at the same time waiving his right to a lien. Morrison was in the same condition and under his judgment could have exercised the right of redemption.
The Stouffer judgments we regard as of no force or significance. They are not judgments at all. The appellees can take advantage of the defects clearly exhibited by the record in any litigation wherein the question may arise. It was only by petition in the receivership proceedings that the so-called judgments were rendered; they were entered without suit. There was no complaint, no process, no service of any sort, nor any act by any officer of the company or anybody else which they had a right to do and which would bind the company, and the couri; acquired no jurisdiction of the Ore Mining & Milling Company to enter a judgment in favor of Stouffer.
The Giant Powder Company acquired nothing by its proceedings for its initiated rights were entirely lost by reason of the Kaiser sale and the failure of the company to redeem from it. Whatever might have been the effect of the sale on Paddack’s rights, that company itself lost any claim which it might have had because it neither bid at the Kaiser sale nor thereafter attempted to redeem from it. The Kaiser sale wiped out the Giant Powder Company’s sale, its judgment, and the deed thereunder, and that company was only left the naked right to redeem. Failing to exercise it, we do not discover that its sale- or its deed in any manner affects the rights of the parties.
We see no occasion to consider the character, force or effect of the proceedings in the Thompson receivership because there is only one proposition presented by counsel respecting it and that is as to the right to bring suit against the company notwithstanding the pendency of these proceedings. As we look at it, the proceedings were not begun for the pur *379 pose of winding up or dissolving the corporation, but simply to obtain an accounting between Thompson and the company and put the possession of the property in the mean time in an officer of the court for management and control pending the final decree. It has many times been decided that a suit of this description is not a destruction of the corporate capacity or the powers of its officers, and does not impair or affect the right of its creditors to bring suit, for the enforcement of their claims. Heath v. M., K. & T. Ry. Co., 83 Mo. 617; O. & M. Ry. Co. v. Russell, 115 Ill. 52; People v. Barnett, 91 Ill. 423; Kincaid v. Dwinelle, 59 N. Y. 548; Pringle v. Woolworth, 90 N. Y. 502; Decker v. Gardner, 124 N. Y. 324.
This discussion disposes of every matter which we conceive to be important. We do not wish to be understood as deciding or determining what the appellees’ rights may be when a sale occurs under the Paddack execution other than as we have indicated. Whether the appellees have lost their rights by filing this bill and prosecuting this litigation and permitting three months to go by, we do not determine. We should be very glad to express our views respecting it but the matter is not presented in such shape as to justify it. What we have determined disposes of this bill, reverses the judgment and leaves the parties to stand on whatever rights they may have after a sale has been had under the Paddack judgment. Ordinarily we like to settle a controversy and we would not shrink from that labor in the present case if the record contained facts on which we might proceed. As we view it, we have decided every question which we have a right to consider, and for the many errors inhering in this decree the judgment will be reversed and the cause remanded.

Reversed.